IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| WILLIAM KEMP GREENE and MARY CAROL GREENE, as parents and next friends for JACKSON KEMP GREENE, a minor, <br><br> Plaintiffs, <br><br> v. <br><br> NOVARTIS PHARMACEUTICALS CORPORATION; SOUTH GEORGIA MEDICAL ASSOCIATES, P.C.; and BRIAN GRINER, M.D., <br><br> Defendants. | Civil Action No. <br> 7:07-CV-00091-HL |

# ORDER

Before the Court is Plaintiffs' Motion to Remand (Doc. 11). For the following reasons, Plaintiffs' Motion to Remand is granted.

## I. FACTS AND PROCEDURAL HISTORY

### A. Factual Background

This case involves a product liability claim against Defendant Novartis Pharmaceuticals Corporation ("Novartis"), a citizen of Delaware and New Jersey, and a medical malpractice claim against Defendants South Georgia Medical Associates, P.C. ("South Georgia Medical") and Brian Griner, M.D. ("Griner"), both citizens of Georgia (collectively "the Georgia Defendants"). The parents of Jackson Kemp Greene ("Jackson"),

1

have brought this action on behalf of their son, who is a Georgia citizen. Plaintiffs allege that Jackson developed Leukemia after using Elidel, a prescription topical cream used to treat eczema and manufactured by Defendant Novartis. Jackson was only four months old when Defendant Griner first prescribed him Elidel for treatment of his eczema. The gist of Plaintiffs' claims against all Defendants is that Elidel was not safe for the treatment of pediatric eczema. Specifically, Plaintiffs allege that Elidel posed a cancer risk to pediatric patients under the age of two. In their claims against Defendant Novartis, Plaintiffs assert, among other things, that Defendant Novartis did not adequately test Elidel before releasing the drug to the market, that Defendant Novartis did not provide an adequate warning for Elidel, and that Defendant Novartis made fraudulent misrepresentations with respect to Elidel's safety in treating pediatric eczema. In their claim against Defendant Griner, Plaintiffs assert that Defendant Griner was negligent in repeatedly prescribing Elidel to Jackson when Jackson was under the age of two. Plaintiffs' claim against South Georgia Medical is based on the vicarious liability of South Georgia Medical for the negligence of Defendant Griner, who was employed by South Georgia Medical at the time the events in question occurred.

B.   **Procedural History**

This lawsuit was originally filed in the Superior Court of Lowndes County, Georgia on May 29, 2007. On July 18, 2007, Defendant Novartis filed its Notice of Removal (Doc. 1) asserting that this Court has both federal diversity jurisdiction and federal question jurisdiction in this case. On August 9, 2007, Plaintiffs filed a Motion to Remand (Doc. 11)

contesting the assertions made in Defendant Novartis's Notice of Removal.

## II. DISCUSSION

On a motion to remand, the removing party bears the burden of establishing federal jurisdiction. Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996). The removal statute is to be narrowly construed with all doubts construed against removal to federal courts. Id. Plaintiffs' Motion to Remand asserts that this Court has neither federal diversity jurisdiction nor federal question jurisdiction in this case. This Court will first address the diversity jurisdiction issue before turning to the issue of federal question jurisdiction.

### A. Federal Diversity Jurisdiction

Federal courts have diversity jurisdiction over cases in which all plaintiffs are diverse from all defendants and the amount in controversy exceeds $75,000. See 28 U.S.C.A. § 1332 (2006). In this case, Plaintiffs are not completely diverse from all Defendants because Plaintiffs are Georgia citizens, and Defendant South Georgia Medical and Defendant Griner are also Georgia citizens. Defendant Novartis, however, contends that this Court should ignore the citizenship of the Georgia Defendants because (1) the Georgia Defendants were fraudulently joined; and (2) the Georgia Defendants were fraudulently misjoined.

The citizenship of fraudulently joined defendants is ignored for purposes of determining whether all plaintiffs are completely diverse from all defendants. See Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). Defendants raising a fraudulent joinder claim have the heavy burden of proving fraudulent joinder by clear and convincing evidence. Id. Defendants can prove that a resident defendant was fraudulently

3

joined by proving either: "'(1) there is no possibility that plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.'" Id. (quoting Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997)). A district court considering a fraudulent joinder allegation must make the determination of whether a resident defendant was fraudulently joined by looking to the plaintiff's pleadings at the time of removal, as supplemented by any affidavits and depositions submitted by the parties. Id.

Here, Defendant Novartis does not allege that Plaintiffs have fraudulently pled jurisdictional facts. Instead, Plaintiffs argue that the Georgia Defendants were fraudulently joined because there is no chance that Plaintiffs can prevail on their medical malpractice claim against them. Defendant Novartis argues that Plaintiffs' Complaint does not establish a cause of action against the Georgia Defendants because the premise of the malpractice claim against Defendant Griner is that he knew or should have known about the same dangers that Defendant Novartis allegedly hid from physicians and members of the public. Indeed, some district courts have found fraudulent joinder when a plaintiff's claim that a physician was negligent for not knowing or warning of a drug's dangers is contradicted by other allegations in the complaint that the drug's manufacturer hid information about the those same dangers from physicians. See, e.g., Baisden v. Bayer Corp., 275 F. Supp. 2d 759 (S.D. W. Va. 2003). In such cases, courts have found fraudulent joinder because the allegations against the manufacturer and the physician are mutually exclusive; a plaintiff cannot establish a cause of action against a physician that is premised on the physician's

4

failure to know or warn of dangers that it could not have known. See Betts v. Eli Lilly and Co., 435 F. Supp. 2d 1180, 1190 (S.D. Ala. 2006). Crucial to the reasoning in the cases relied upon by Defendant Novartis is that the plaintiffs in those cases did not identify a source of information available to the physician other than the manufacturer. See id. (summarizing the same cases relied upon by Defendant Novartis). Thus, if the physician in those cases could have learned of the drug's dangers from a source other than the manufacturer, it would not have been contradictory to simultaneously pursue a claim against the drug's manufacturer for withholding information about the drug's dangers and a claim against the physician for failing to warn of those dangers. See id.

In this case, it is clear that the Plaintiffs' claims are not contradictory. Plaintiffs have alleged that Defendant Griner was negligent for prescribing Elidel to Jackson when Jackson was under two years of age. In support of their claim against Defendant Griner, Plaintiffs attached to their Complaint an expert affidavit, as required by Georgia law and referenced in their Complaint, which asserts that Defendant Griner was negligent for prescribing "Elidel to Jackson Kemp Greene at least four times while the infant was under the age of two years old, contrary to the prescribing information and indications." (Plas.' Compl. Ex. A) (emphasis added). Elidel's prescribing information, which provided that Elidel should not be prescribed to children under the age of 2, is not alleged to have been hidden from Defendant Griner, and therefore, Plaintiffs' claims are not contradictory.

In Betts, a case similar to the one before the Court, the Southern District of Alabama rejected a Defendant's fraudulent joinder allegation. 435 F. Supp. 2d at 1190-91. In that

5

case, the complaint alleged that the non-diverse physician should have known of the drugs dangers from a source other than the manufacturer. Id. Specifically, the plaintiff's complaint listed the Physician's Desk Reference as a source of information about the drug's dangers. Similarly, Plaintiffs in this case have alleged that Defendant Griner was negligent for prescribing Elidel contrary to the prescribing information and indications. Though Plaintiffs' Complaint does not state the specific source of that prescribing information, it is clear from Plaintiffs' Complaint that the malpractice claim against Defendant Griner is not premised on his failure to know or warn of dangers that he could not have known. Moreover, in their Brief in Support of their Motion to Remand, Plaintiffs cite the Physician's Desk Reference as one source of Elidel's prescribing information, and Plaintiffs have attached as an exhibit to their Brief a copy of the relevant portion of the Physician's Desk Reference. Accordingly, Plaintiffs' allegation of malpractice against Defendant Griner is not contradicted by allegations that Defendant Novartis deliberately hid information about Elidel's dangers from physicians, and therefore, Defendant Griner was not fraudulently joined.

Defendant Novartis's next argument in support of diversity jurisdiction is that the Georgia Defendants were fraudulently misjoined. In Tapscott v.MS Dealer Service Corp., 77 F.3d 1353 (11th Cir. 1996), abrogated on other grounds by Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000), the Eleventh Circuit Court of Appeals held that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." 77 F.3d at 1360. The Eleventh Circuit concluded that the resident defendants in Tapscott were misjoined under Federal Rule of

Civil Procedure 20 ("Rule 20") because the resident defendants had no real connection with the controversy involving the non-resident defendants. Id. In reaching its decision, the Eleventh Circuit made it clear that misjoinder constitutes fraudulent joinder only if it is "egregious"; "mere misjoinder" does not necessarily constitute fraudulent joinder. Id.

Defendant Novartis argues that the Georgia Defendants were fraudulently misjoined under Rule 20[1] because Plaintiffs' product liability and medical negligence claims do not arise out of the same transaction or occurrence. Under Rule 20, the proper joinder of defendants requires: "(1) a claim for relief asserting joint, several, or alternative liability and arising from the same transaction, occurrence, or series of transactions or occurrences, and (2) a common question of law or fact." Tapscott, 77 F.3d at 1360 (citing FED. R. CIV. P. 20). Here, Plaintiffs have asserted a product liability claim against Defendant Novartis for manufacturing a dangerous drug and concealing its dangers and a medical malpractice claim against Defendant Griner for prescribing the same drug manufactured by Defendant Novartis. Clearly, the product liability and medical negligence claims arise from the same transaction or occurrence. Other courts that have considered this issue have reached the same conclusion on identical facts. See, e.g., Rice v. Pfizer, Inc., No. 3:06-CV-0757-M, 2006 WL 1932565

---

[1] There is apparently a split of authority as to whether state or federal joinder rules apply in cases involving a fraudulent misjoinder allegation. See Accardo v. Lafayette Ins. Co., No. 06-8568, 2007 WL 325368, at *3 (E.D. La. Jan. 30, 2007) (noting the split of authority on the issue of whether state or federal joinder rules apply in determining whether defendants were misjoined). Fortunately, this Court need not resolve this conflict because both parties concede that there is no real difference between Georgia's joinder rules and the federal joinder rules. Nonetheless, for purposes of this case only, this Court will apply the federal rules in addressing the misjoinder allegation. See FED. R. CIV. P. 20.

7

(N.D. Tex. July 7, 2006); Moote v. Eli Lilly and Co., No. C-06-472, 2006 WL 3761907 (S.D. Tex. Dec. 21, 2006); Jamison v. Purdue Pharma Co., 251 F. Supp. 2d 1315 (S.D. Miss. 2003). For example, in Rice the Northern District of Texas held that a negligence claim against a physician who prescribed a drug and a product liability claim against the manufacturer of the drug arose out of the same transaction or occurrence. 2006 WL 1932565, at *3. The court in Rice noted that the claims were based on the same injuries that were allegedly caused by the same medication, and the resolution of the claims against the drug company could affect the liability of the physician because the drug manufacturer would likely rely on the learned intermediary defense. Id. This case involves facts identical to the facts in Rice, and the same reasoning applies. Plaintiffs' claims involve the same injury caused by the same drug, and the resolution of the claim against Defendant Novartis could affect the liability of Defendant Griner because of the learned intermediary defense, which is a defense that Defendant Novartis raised in its Answer. For these reasons, this Court finds that Defendant Novartis and the Georgia Defendants were not fraudulently misjoined. Accordingly, this Court does not have diversity jurisdiction over this case because there is not complete diversity.

  **B. Federal Question Jurisdiction**

Having determined that there is no federal diversity jurisdiction in this case, the Court will not address Defendant Novartis's contention that the Court has federal question jurisdiction. Under 28 U.S.C.A. § 1331, federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28

U.S.C.A. § 1331 (2006). Federal question jurisdiction exists (1) if federal law creates the cause of action, or (2) if plaintiff's state law claims pose a substantial federal question. See Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005). Federal question jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). As Defendant Novartis removed this action to federal court, it bears the burden of demonstrating that federal question jurisdiction exists. See Kirkland v. Midland Mortgage Co., 243 F.3d 1277, 1281 n.5 (11th Cir. 2001).

Here, Plaintiffs have asserted state law causes of action, and therefore, federal question jurisdiction exists only if Plaintiffs' state law claims pose a substantial federal question. Defendant Novartis argues that Plantiffs' state law inadequate testing and warning claims involve substantial questions of federal law. In particular, Defendant Novartis points to allegations in Plaintiffs' Complaint that allegedly challenge the Food and Drug Administration's ("FDA") initial approval of Elidel and the various warnings that were packaged with it. As a result, Defendant Novartis contends that substantial federal questions exist regarding the proper interpretation of the FDA's regulations regarding labeling and the FDA's role in the regulation of pharmaceuticals. Defendant Novartis also cites the preamble to an FDA rule that was promulgated last year and deals with the labeling of prescription drugs. See Requirements on Content and Format of Labeling for Human Prescription Drug and Biological Products, 71 Fed. Reg. 3922 et seq. (Jan. 24, 2006). In the preamble cited by Defendant, the FDA concluded that "State laws that would require labeling that conflicts

with or is contrary to FDA-approved labeling" are preempted. Id. at 3934. Thus, Defendant Novartis also contends that this Court has federal question jurisdiction because of the potential preemption of Plaintiffs' state law claims involving Elidel's labeling.

As stated above, federal courts only have federal question jurisdiction over "cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27-28 (1983). Thus, under the "well-pleaded complaint rule," federal question jurisdiction does not exist on the basis of a federal defense that the defendant might possibly raise to defeat plaintiff's claims. See id. at 10-11 & n.9; Rivet v. Regions Bank of La., 522 U.S. 470, 475 (1998). Here, Defendant Novartis's assertions that Plaintiffs' claims challenge certain FDA decisions demonstrates the presence of potential federal defenses, which are insufficient to confer federal question jurisdiction. See Jamison, 251 F. Supp. 2d at 1325 ("The defendants' assertion that the plaintiffs' claims 'directly and repeatedly challenge the FDA-approved formulation, warnings, and labeling of Oxycontin' demonstrates, at most, that the defendants view FDA approval as a possible defense in this action. This in itself is insufficient to support federal jurisdiction."). Defendant Novartis also relies heavily on the potential preemption of Plaintiffs' state law causes of action as a basis for federal question jurisdiction. Preemption, however, is a federal defense and as such

cannot give rise to federal question jurisdiction.[2] Accordingly, because Defendant Novartis has not demonstrated that the resolution of Plaintiffs' well-pleaded state law claims involves the interpretation of any federal laws, this Court does not have federal question jurisdiction in this case.

Because this Court has concluded that there is neither federal diversity jurisdiction nor federal question jurisdiction, Plaintiffs' Motion to Remand is granted.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand is granted.

**SO ORDERED**, this the 14th day of November, 2007.

*/s/ Hugh Lawson*
**HUGH LAWSON, Judge**

dhc

---

[2]The only exception to the well-pleaded complaint rule is an exception known as "complete preemption." Complete preemption exists only when "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Caterpillar, Inc., 482 U.S. at 393 (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987)). Complete preemption does not exist in this case, and Defendant Novartis has not even raised the issue.